**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                        CR No. 01-867 MV

MELISSA J. CHAVEZ, TERESA TAPIA,
JOHN TRUJILLO, aka Caveman,
SOFIA LOPEZ, ARTURO GALVAN,
ALEXIS ORTIZ, and ALBERTO HINOJOS,
aka Guerro,

       Defendants.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on Defendants' Motion to Dismiss Indictment **[Doc. No. 37]**, Motion to Dismiss Conspiracy Charge **[Doc. No. 65]**, and Motion to Dismiss Indictment Due to Failure to Respond to Motion to Dismiss Conspiracy Charge **[Doc. No. 77]**. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, **DENIED** the motions at a status conference on July 9, 2002. This Memorandum Opinion sets forth the bases for the Court's prior ruling.

## BACKGROUND

Defendants Melissa J. Chavez, Teresa Tapia, John Trujillo (aka Caveman), Sofia Lopez, Arturo Galvan, Alberto Hinojos (aka Guerro), and Alexis Ortiz were originally indicted for conspiracy to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Defendant Alexis Ortiz subsequently filed a Motion to Dismiss Indictment **[Doc. No. 37]**, Motion to Dismiss Conspiracy Charge **[Doc. No. 65]**, and Motion to Dismiss Indictment Due to Failure to Respond to Motion to Dismiss Conspiracy Charge **[Doc. No. 77]**. Defendants Melissa J.

Chavez, Teresa Tapia, Sofia Lopez, Arturo Galvan, Alberto Hinojos, and John Trujillo joined Defendant Alexis Ortiz's Motion to Dismiss Indictment **[Doc. Nos. 53 & 54]**. Defendant Melissa J. Chavez also joined Defendant Alexis Ortiz's Motion to Dismiss Conspiracy Charge and Motion to Dismiss Indictment Due to Failure to Respond to Motion to Conspiracy Charge **[Doc. No. 106]**. The Court heard oral arguments on May 5, 2002, at which time it took the motions under advisement and directed defense counsel to submit affidavits in support of the motions.

On July 2, 2002, the government filed a Superceding Indictment **[Doc. No. 116]**, which added 17 additional counts alleging the use of a telephone to facilitate a drug trafficking offense; notably, Defendant Alexis Ortiz was not named in the Superceding Indictment. On July 9, 2002, the Court dismissed Defendant Alexis Ortiz without prejudice from this criminal case **[Doc. No. 122]**. On the same day, the Court held a status conference with the remaining defendants, at which time it denied the Motion to Dismiss Indictment, Motion to Dismiss Conspiracy Charge, and Motion to Dismiss Indictment Due to Failure to Respond to Motion to Conspiracy Charge as it pertained to the remaining defendants.

## DISCUSSION

As a preliminary matter, the Court notes that the Superceding Indictment was filed after Defendant Ortiz had filed her motions and after the motions hearing had been held. The Court, however, did not believe Defendant's motions were rendered moot by the Superceding Indictment because the underlying basis for the motions remained unchanged. Nevertheless, the motions should have been denied as moot as to Defendant Ortiz because she was dismissed from this criminal case on the same day as the Court's rulings. The Court will continue with its analysis of its rulings as to the other co-defendants who joined Defendant Ortiz in her motions.

**I.      Motion to Dismiss Indictment**

Defendant Ortiz, joined by Defendants Melissa J. Chavez, Teresa Tapia, Sofia Lopez, Arturo Galvan, Alberto Hinojos, and John Trujillo, moved the Court to dismiss the Indictment because they believed the government did not provide an elements instruction to the grand jury.  They argued that this failure constituted prosecutorial misconduct and violated the constitutional mandate of separation of powers and their Fifth Amendment Due Process rights.  Defendants also stated that they were unable to ascertain what facts the grand jury had relied upon to find probable cause.  Thus, Defendants asked the Court to exercise its supervisory power to force the government to provide an elements instruction to the grand jury.  While the Court believes that Defendants made interesting and valid arguments, it did not find them sufficiently persuasive to warrant a dismissal of the Indictment.

      A.      Violation of Separation of Powers

Defendants argued that the government acts as legislature, prosecutor, and judge by determining a defendant's sentence under the Sentencing Guidelines through its charging power, thereby violating the separation of powers, and that such power would be diminished by obligating the government to provide an elements instruction to the grand jury.  Yet, the United States Supreme Court and the Tenth Circuit have explicitly found the guidelines to be constitutional without requiring an elements instruction.  *See Mistretta v. United States*, 488 U.S. 361 (1989); *United States v. Singer*, 868 F.2d 1201 (10th Cir. 1989).  While the Court found Defendants' arguments to be interesting and perhaps theoretically persuasive, it could not grant such a drastic request as a dismissal of an indictment without greater legal and factual support.

B.        Prosecutorial Misconduct for Failure to Provide Elements Instruction

Defendants further argued that the Court should dismiss the Indictment because of the government's prosecutorial misconduct in not providing an elements instruction to the grand jury prior to its probable cause deliberations. However, the Court did not believe Defendants' argument was supported by case law.

The Tenth Circuit has described the function of the grand jury as "not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will." *United States v. Kilpatrick*, 821 F.2d 1456, 1464 (10th Cir. 1987) (quotations and citations omitted). However, "[d]ismissals of indictments for prosecutorial misconduct are rarely upheld." *Id.* at 1465.

A trial court may dismiss an indictment based on two theories of law:

> A court may dismiss on the bases of the Fifth Amendment Due Process or Grand Jury Clauses. The constitutional concerns focus on the fairness to the defendant and on remedying any harm to his basic rights. A court may also dismiss an indictment by relying on its supervisory powers. The supervisory powers theory is premised on the federal courts' inherent ability to formulate procedural rules not specifically required by the Constitution or the Congress.

*Id.* (quotations and citations omitted).

Regardless of the theory upon which a court relies, an indictment may be dismissed for prosecutorial misconduct only when it is "flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *Id.* (quoting *United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983)). Moreover, the "relevant inquiry focuses on the impact of the prosecutor's misconduct on the grand jury's impartiality, not on the degree of the

prosecutor's culpability." *Id.* at 1466 (quoting *United States v. De Rosa*, 783 F.2d 1401, 1405 (9th Cir. 1986)). And finally, "[t]here is a presumption of regularity that attaches to grand jury proceedings." *Id.* at 1473 (citing *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974)).

In addition, the U.S. Supreme Court has ruled that an indictment can be dismissed only if errors by the grand jury actually prejudiced the defendant. *See Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). Under the standard of prejudice established by the Supreme Court,

> [D]ismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations.

*Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)). A trial court only needs to engage in this harmless-error analysis in "cases . . . in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Id.* at 257.

1. *Violation of Constitutional Rights*

Defendants' contention that a grand jury's lack of element instructions violated their constitutional rights is simply not supported by case law. First, in their motion, Defendants relied on a New Mexico State Supreme Court decision, *State v. Ulibarri*, 997 P.2d 818 (N.M. 2000), in which the court held that a prosecutor is required to instruct a grand jury of the essential elements of the charged offense. Yet, the *Ulibarri* decision not only is a state case with no persuasive authority over federal courts, but also relies upon state statutes, none of which are relevant to our inquiry. Moreover, the district court decisions cited by Defendants, which hold that instructions to a grand jury must not be erroneous or misleading, do not mandate that the government provide an elements

instruction to the grand jury. *See United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991); *United States v. Sousley*, 453 F. Supp. 754 (W.D. Mo. 1978).

Defendants absolutely are correct that a grand jury must find probable cause for all of the essential elements in the offense charged before returning an indictment. *See Kilpatrick*, 821 F.2d at 1463 ("It is axiomatic that all the material facts and circumstances embraced in the definition of the offence must be stated, or the indictment will be defective. . . . A defendant cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." (quotations and citations omitted)). However, under current case law, a prosecutor is not required to provide elements instructions to a grand jury, particularly instructions like those given to a petit jury. *See, e.g., United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986) ("Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face."); *United States v. Larrazolo,* 869 F.2d 1354, 1359 (9th Cir. 1989) ("[T]he prosecutor has no duty to outline all the elements of conspiracy so long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied."), *cited in United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994)); *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982) ("Erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment.").

One district court explained in detail why legal instructions given to a petit jury should not be required concomitantly for a grand jury:

> [The] functions of the petit jury and of the grand jury are clearly distinguishable. The former is charged with determining the truth of the charges while the job of the latter is to determine whether there is probable cause to believe the charges are true.

*United States v. Simon*, 510 F. Supp. 232, 236 (E.D. Pa. 1981). The *Simon* court additionally addressed an issue that is also relevant to our case.

> Another problem with defendant's argument is that it is based on mere speculation about what happened during the grand jury deliberations which culminated in the present indictment. This motion simply makes a general indictment of the way grand juries operate in this district. Such a broadside attack, lacking both a specific factual basis and supporting legal precedent, cannot justify the dismissal of an indictment, an extraordinary form of relief.

*Id.* Defendants here make similarly general allegations of how grand juries operate without providing specific factual claims as to what kind of instructions the indicting grand jury in this case received. This is yet another reason why the Court could not grant those of Defendants' motions that were based on the alleged deficiency of the legal instructions given to the grand jury.

2. *Court's Supervisory Power*

Defendants also asked the Court to exercise its supervisory power to formulate procedural rules that would require the government to provide an elements instruction to the grand jury. The Court does not have the authority to exercise that power in the manner requested.

The United States Supreme Court has made the following statement regarding a court's supervisory power:

> Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct.

*United States v. Hasting*, 461 U.S. 499, 505 (1983) (quotations and citations omitted). However, the Court also has stated that:

> Even a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions. . . . To allow otherwise would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.

*Bank of Nova Scotia*, 487 U.S. at 253 (quotations and citations omitted).

More recently, the U.S. Supreme Court placed severe restrictions on a court's use of its supervisory powers over grand jury proceedings, limiting it to misconduct by a grand jury that "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 46 (1992) (quotations and citations omitted).

> We did not hold in *Bank of Nova Scotia* . . . that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury, but as a means of *prescribing* those standards of prosecutorial conduct in the first instance—just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves. . . . Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such "supervisory" judicial authority exists. . . .

*Id.* at 46-47.

Contrary to Defendants' assertions, no "legally compelled standards of prosecutorial conduct" exist that would require the provision of an elements instruction to a grand jury. *Id.* Thus, formulating a procedural rule to mandate an elements instruction would be exactly the kind of supervisory judicial authority that the *Williams* Court prohibited.

C.   Lack of Evidence to Support Probable Cause

Defendants also contend that the grand jury had an insufficient amount of evidence by which it could have found probable cause. In support of this claim, the Court requested that Defendants provide affidavits explaining in further detail why there was insufficient evidence as to each individual defendant. The Court does not find either Defendants' arguments or their affidavits to be persuasive on this issue.

The United States Supreme Court has stated that:

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.

*United States v. Calandra*, 414 U.S. 338, 344–45 (1974); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." (footnote omitted)). The Tenth Circuit similarly has stated that:

> The district court is prohibited from looking behind the indictment to determine if it was based on inadequate or incompetent evidence. . . . We cannot in these proceedings go into trial of the general issue, the insufficiency of proof, or the errors in the evidence before the grand jury.

*Kilpatrick*, 821 F.2d at 1470 (citation omitted); *see also United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983); *United States v. Beery*, 678 F.2d 856, 859 (10th Cir. 1982).

It would seem, then, that the Court is prohibited from determining whether or not the government submitted sufficient information to the grand jury with which it could return an indictment. However, even assuming *arguendo* that a *complete* lack of evidentiary support would

-9-

make an indictment *facially invalid*, the Court does not believe Defendants have made such a showing through the affidavits submitted to the Court.

        D.      <u>Disclosure of Grand Jury Proceedings</u>

In her supplemental briefing, Defendant Ortiz also requested that, pursuant to Rule 6(e)(3)(C) of the Federal Rules of Criminal Procedure, the Court order the government to disclose the grand jury transcripts in light of the total lack of evidence against her. The Court will assume that the co-defendants who joined the Motion also join in the supplemental briefing.

Rule 6(e)(3)(C) states:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made . . . when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury . . . . If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Fed. R. Crim. P. 6(e)(3)(C)(i)–(ii). In construing Rule 6(e)(3)(C), the United States Supreme Court has recognized the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 424 (1983) (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 681 (1958)). This confidentiality serves the following interests:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by

> preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979).

Accordingly, the Court has required a "strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Sells Engineering*, 463 U.S. at 443.

> Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.

*In re Special Grand Jury 89-2*, 143 F.3d 565, 569–70 (10th Cir. 1998) (quoting *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997)). The Tenth Circuit has found typical cases of "particularized need" to "arise when a litigant seeks disclosure of grand jury transcripts to impeach a witness, refresh his recollection, [or] test his credibility." *Id.* at 570 (alteration in original) (quotations and citations omitted).

If the Court determines that disclosure is proper, the " 'disclosure order must be structured to cover only the material required in the interests of justice.' " *Id.* at 572 (quoting *United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980)). Thus, the disclosure must be "limited to the claimed need." *Id.* (quoting *In re Grand Jury Matter*, 682 F.2d 61, 66 (3d Cir. 1982)). As a result, the Tenth Circuit has required a district court to conduct an *in camera* review of the grand jury materials in order to avoid unnecessary disclosure.

> While we recognize the workload district court judges are faced with, this *in camera* procedure is necessary due to the paramount concern

-11-

> of all courts for the sanctity and secrecy of grand jury proceedings. In undertaking this inquiry the district court should not determine what is useful to the litigants but rather should focus on the question of whether particularized need has been shown for each item to be released.

*Id.* (citation omitted); *accord United States v. Rockwell Int'l Corp.*, 173 F.3d 757 (10th Cir. 1999) (providing specific procedures to follow prior to release of grand jury transcripts).

The Court finds that Defendants have not made the requisite showing for the grand jury materials. Their request is somewhat vague and general, and more like a fishing expedition than a request to address any "particularized need." While the Court is concerned with the appearance of a grand jury acting merely as a rubber stamp for the government, the affidavits submitted by Defendants have not convinced the Court that the evidence was wholly insufficient to find probable cause. As a consequence, the Court cannot grant Defendant's request for disclosure of the grand jury transcripts.

## II.  **Motion to Dismiss Conspiracy Charge**

Defendant Alexis Ortiz additionally filed a Motion to Dismiss Conspiracy Charge, arguing that the conspiracy charge should be dismissed because the indictment provides no factual statement which would form the basis of any conspiratorial agreement and no information regarding the facts that the government intends to prove as the overt acts. Again, this Motion was denied as moot as to Defendant Ortiz because she had been dismissed as a party to this case. However, because Defendant Melissa Chavez had joined in this Motion, the Court will explain the basis for its ruling as to Defendant Chavez.

The Tenth Circuit has held that an "indictment is sufficient if it contains the elements of the offense charged, putting the defendant on fair notice of the charges against which he must defend,

and if it enables a defendant to assert [a double jeopardy defense]." *United States v. Prentiss*, 206 F.3d 960, 964 (10th Cir. 2000) (alteration in original) (citation omitted), *rehearing en banc,* 256 F.3d 971 (10th Cir. 2001), *opinion after remand*, 273 F.3d 1277 (10th Cir. 2001). An indictment must contain all of the essential elements in order to serve two functions:

> First, it informs the defendant of the nature and cause of the accusation as required by the Sixth Amendment of the Constitution. Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime.

*Id.* (quoting *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (en banc)); *see also United States v. Mobile Materials, Inc.* 871 F.2d 902 (10th Cir. 1989), *opinion supplemented on rehearing by* 881 F.2d 866 (10th Cir. 1989); *United States v. Staggs*, 881 F.2d 1527 (10th Cir. 1989). An invalid indictment "cannot be cured by a bill of particulars that alleges facts establishing the missing element." *Mobile Materials*, 871 F.2d at 908 n.4. Moreover, an "indictment is generally sufficient to overcome constitutional concerns if it sets forth the words of the statute, as long as the statute itself adequately states the elements of the offense." *Staggs*, 881 F.2d at 1530 (citations omitted); *see also Mobile Materials*, 871 F.2d at 910 n.5; *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).

The Indictment in this case charges the following:

> From on or about the 8th day of November, 2000 to on or about the 21st day of January, 2001, in Bernalillo County, in the State and District of New Mexico and elsewhere, the Defendants, **MELISSA J. CHAVEZ, TERESA TAPIA, JOHN TRUJILLO, a/k/a Caveman, SOFIA LOPEZ, ARTURO GALVAN, ALEXIS ORTIZ, and ALBERTO HINOJOS, a/k/a Guerro,** did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together and with each other and with other persons whose names are known and unknown to the grand jury to commit the following

>       offense against the United States, to wit:  Distribution of a Quantity
>       of Cocaine, a Schedule II Controlled Substance, in violation of 21
>       U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).
>               **In violation of 21 U.S.C. § 846**.

The Court finds that this conspiracy charge sufficiently passes muster.  The government correctly argues that no "overt act" is required to find a drug conspiracy under § 846.  *See United States v. Meyers*, 95 F.3d 1475, 1485 (10th Cir. 1996) ("[B]ecause conspiracy does not require the government to establish any overt acts, Meyers' contention that the overt acts alleged in the indictment were false is irrelevant."); *see also United States v. Smith*, 692 F.2d 693, 696 (10th Cir. 1982) ("[A]n indictment under section 846 need not allege overt acts . . . .").  Furthermore, the Tenth Circuit has approved other conspiracy indictments that did not include a basis for a conspiratorial agreement.  For example, in *Dunn,* the indictment at issue merely "quoted the language of 21 U.S.C. § 846 and included the dates of the illegal activity, the place, and the specific controlled substance." 841 F.2d at 1029.  The Tenth Circuit found this indictment to be sufficient, explaining that "[a]n indictment need not go further and allege 'in detail the factual proof that will be relied upon to support the charges.'"  *Id.* (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)).  Consequently, neither grounds for dismissing the conspiracy charge is supported by case law.

### III.    Motion to Dismiss Conspiracy Charge for Failure to Respond

Defendant Alexis Ortiz also moved to dismiss the conspiracy charge due to the government's failure to timely respond to her Motion to Dismiss the Conspiracy Charge.  The Motion is denied as moot as to Defendant Ortiz because she was dismissed as a party to this case, but the Court will address the validity of the request as to Defendant Melissa Chavez, who joined Defendant Ortiz in this Motion.

Defendant Ortiz filed the Motion to Dismiss the Conspiracy Charge on October 18, 2001, but the government did not respond until May 9, 2002—the day before the Court's hearing on the Motion.[1] Defendants are correct that the Court may construe a party's failure to respond to a motion as a default against that party. Defendants are also correct that the government's failure to respond was a serious neglect in the prosecution of this case, and the Court does not take such actions lightly. Nevertheless, the Court believes that dismissing the Indictment for the government's shortcomings in this regard is an extreme penalty, especially in light of the deficiencies in Defendants' Motion as already explained above.

## CONCLUSION

The Court reiterates its concern of any appearance of impropriety with regard to any indictment returned by a grand jury. Grand jury proceedings have played a critical role in protecting individuals from frivolous and malicious prosecution by the government, and their importance should not be taken for granted. Had Defendants presented sufficient evidence of an improper indictment, the Court would not have hesitated to have ordered at least the disclosure of grand jury materials for *in camera* review. However, no such showing has been made in this case, and the Court shall therefore deny all of Defendants' motions.

Dated this 14th day of November, 2002.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

---

[1] The government did not respond to Defendant Ortiz's Motion to Dismiss Indictment until October 1, 2001; thus, this response was also untimely.

<u>Attorney for Plaintiff</u>:
Larry Gomez, Esq.

<u>Attorneys for Defendants</u>:
John F. Samore, Esq.
Hank Farrah, Esq.
James P. Baiamonte, Esq.
Keith R. Romero, Esq.
Stephen D. Aarons, Esq.
Benjamin A. Gonzales, Esq.
Justin K. Hall, Esq.
William C. Marchiando, Esq.
Kimberly A. Middlebrooks, Esq.
Paul J. Kennedy, Esq.